**Maria Rivera MENDEZ, Individually and on behalf of all other persons similarly situated, Plaintiff,**

**v.**

**Hon. Louis B. HELLER, Individually and as Presiding Justice of Special Term, Part V, of the Supreme Court of the State of New York, Kings County, et al., Defendants.**

**No. 74 C 440.**

United States District Court, E. D. New York.

Aug. 8, 1974.

Marjory D. Fields, Brooklyn, N.Y. (John C. Gray, Jr., Brooklyn Legal Services Corp., New York City, of counsel), for plaintiff.

Amy Juviler, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., of counsel), for defendants and pro se.

## MEMORANDUM

### INCORPORATING FINDINGS OF FACT AND ORDER FOR JUDGMENT

Before MULLIGAN, Circuit Judge, and DOOLING and PLATT, District Judges.

PER CURIAM.

Plaintiff's action seeks to draw in question the constitutional validity of New York Domestic Relations Law, § 230, subd. 5. Defendants are the Justice of the Supreme Court of the State of New York presiding at Special Term Part V, Kings County, the Chief Clerk of that Special Term, and the Attorney General of the State. Section 230 provides that an action for divorce may be maintained only when

"Either party has been a resident of the state for a continuous period of at least two years immediately preceding the commencement of the action"

or where the parties were married in the state and at least one of them resided in the state for a year before the divorce action, or the parties resided in the state as husband and wife at some time and at least one party resided in the state for a year before suit, or the "cause" for the marital action occurred in the state and at least one party had resided in the state for at least a year before suit, or

"The cause occurred in the state and both parties are residents thereof at the time of the commencement of the action . . ."

The action is framed under 42 U.S.C. § 1983 (and jurisdiction is based on 28 U.S.C. § 1343) as an action to redress a deprivation under color of state law of a right, privilege or immunity secured to plaintiff by the Federal Constitution.

Plaintiff avers, and it is not denied, that she is and has been a resident and domiciliary of New York since April 1973, and that she intends to remain indefinitely in New York. Earlier she resided in Puerto Rico for ten years, and earlier than that, had lived in New York for ten years. She married Ernest Edgar Mendez in San Juan, Puerto Rico, on November 21, 1972, and they lived together in Puerto Rico as husband and wife until March 22, 1973. The marriage is childless. Plaintiff says that she wishes to sue her husband for divorce pursuant to Domestic Relations Law § 170, subd. 1 on the basis of her husband's cruel and inhuman treatment of her while they were living together in Puerto Rico. She and her husband were not married in New York, they have never lived together as husband and wife in New York, the cruelty and inhumanity which she asserts as a basis for her divorce action did not occur in New York and her husband is now and continues to be a resident of Puerto Rico. In consequence, if plaintiff wishes to sue for divorce in New York, as she does, she is barred from doing so by the provisions of Domestic Relations Law Sec. 230, subd. 5 until she has resided in New York for two full years preceding suit. Plaintiff avers that since March 22, 1973, she has been a full time employee of Grayarc Company in Brooklyn, that she has worked for that company continuously since the date of her first employment and that she is a registered voter in the State of New York.

She avers further that she is without substantial funds, and can not afford either to repair to Puerto Rico to commence an action for divorce or adequately to defend herself in a Court in Puerto Rico if she is there sued by her husband for a divorce.

The first question is whether the action presents a genuine case or controversy in which the issue put forward by the plaintiff can be resolved. The plaintiff's husband has not been joined as a defendant; it may be that he could not successfully be joined as a defendant in this Court. See Rule 4(e). The named defendants are joined on the basis that

they are directly and responsibly charged with the duty of enforcing the statute, if it is valid, as they are required to presume.

The second question, assuming that a case is presented which requires decision of the issue, is the validity of the statute: plaintiff challenges it as denying to her as a recent resident the due process extended to people who, irrelevantly to the questions involved, have resided here over two years, as interfering with her right to migrate or travel in violation of the 14th Amendment and of the Commerce Clause, and as violating the equal protection clause of the 14th Amendment in creating an irrationally delimited class with the result that plaintiff is discriminated against.

## I

The hearing of the motion established that the practice in marital actions, including actions for divorce, is well settled in the New York Courts. While the substantive grounds on which a divorce may be obtained are established now in Section 170 of the Domestic Relations Law and are today separated from the provision of the law limiting the circumstances in which the action for a divorce "may be maintained," for historic reasons in large part, the "jurisdictional" aspect of divorce actions has been traditionally subject to judicial scrutiny whether the actions are contested or uncontested. The complaint in an action for divorce must distinctly allege jurisdictional matter, specifically the residential and other requirements of Section 230. Marital cases are subject to separate handling in the Courts and the Clerk of the Special Term established for such marital actions examines the complaint to see whether or not the residential allegations are present in it. If they are lacking, then the Clerk rejects the pleading for filing, and in substance advises counsel that the pleading is inadequate and will not be entertained. If the plaintiff has a particular point— such as the present constitutional point —which in his or her judgment excuses the making of the allegedly indispensable allegation, the complaint can, upon the plaintiff's insistence, be submitted to the Judge. The Judge then examines the pleading to determine whether or not it does satisfy the requirements of both Section 170 and Section 230 by alleging matter adequate to justify maintenance of the action. It would then be the responsibility of the Judge to determine whether the residential requirement was unconstitutional or was valid and would be enforced.

If the Clerk or the Court overlooked the point, it would again and automatically come up, even in an uncontested case, at the inquest which would follow defendant's default. At inquests a printed card is presented to counsel for his or her guidance in questioning the plaintiff and other witnesses; and among the questions contained on the printed card which must be asked, is the question concerning residence. In this setting, it is plaintiff's contention that the residence issue is directly and inevitably presented and ruled on, and invariably will end in requiring satisfaction of the residential term of the statute.

Plaintiff contends further that if a challenge to the constitutional validity of the statute were presented to Mr. Justice Heller or any other judge presiding in the Marital Part, the Attorney General of the State would immediately be notified, as required by Civil Practice Law and Rules § 1012(b), and, thereupon, the Attorney General, the statute provides,

"shall be permitted to intervene in support of its constitutionality."

Executive Law, § 71 provides that, where the Court in such a case has made an order authorizing the appearance of the Attorney General "it shall be the duty of the attorney-general to appear in such action or proceeding in support of the constitutionality of such statute." Plaintiff's position, then, is that in joining the Clerk of the particular Special Term and the Justice presiding at it as well as the Attorney General she has brought before the Court those who are

charged with responsibility to give effect to the statute in any legal proceeding within its language and with the duty to defend the statute and its validity. Plaintiff argues that the absence of the husband as the party who would be bound by the adjudication is not decisive, because his interest, if he has a legally cognizable interest in the precise issue, will not be adjudicated, but only her right—as against the state—as a person not two years resident in the state to have access to its courts in an action for divorce. *Cf.* New England Mut. Life Ins. Co. v. Brandenburg, S.D. N.Y.1948, 8 F.R.D. 151, 154–155. And plaintiff points out that although in none of them was the point specifically discussed, the reported Federal cases dealing directly with durational residence requirements for marital actions were all suits against the Judges of the Marital Courts or against the Attorneys General, Governors or other officers of the State, and that the spouse of the plaintiff was not in any of these cases joined as a defendant. See Wymelenberg v. Syman, D.Wis.1971, 328 F.Supp. 1353 (suit against judge; attorney general and governor notified of pendency of suit); Shiffman v. Askew, M.D.Fla., 1973, 359 F.Supp. 1225 (suit against governor and attorney general); Mon Chi Heung Au v. Lum, D.Haw.1973, 360 F.Supp. 219 (judge and director of family court, responsible for routine procedural administration); Sosna v. Iowa, N.D.Iowa, 1973, 360 F.Supp. 1182 (suit against the state and the judge of the district court); Larsen v. Gallogly, D.R. I.1973, 361 F.Supp. 305 (parties uncertain but one defendant was the State Court Judge and against him damages were sought as well as a declaratory judgment respecting invalidity of the statute); McCay v. South Dakota, D.S. D.1973, 366 F.Supp. 1244 (parties in addition to the state uncertain but only the attorney general appeared and he appeared for all defendants).

Boddie v. Connecticut, 1971, 401 U.S. 371, 374, 377, 380–381, 91 S.Ct. 780, 28 L.Ed.2d 113, may be taken for present purposes to put beyond dispute the principle that a person having a good faith claim or defense vindicable only through judicial determination may not be denied access to an appropriate judicial tribunal unless the bar to judicial relief can be constitutionally justified. *Boddie* also stands for the proposition that a litigant cannot be denied access to a court on the ground that another court is available if the availability of the other court imposes burdens that make the right to resort to it unreal or beyond the means of the prospective litigant. In general, it must be agreed, a judicial officer who renders an erroneous decision is not suable by the litigant against whom he has rendered the erroneous decision, even if the claim is sought to be supported by characterizations of malice, recklessness, etc. See Pierson v. Ray, 1967, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288. And, finally, it may be taken for granted that where a litigant has a specific right to have an action entertained in a particular court or to have some particular determination made in that court which is refused by a judicial officer, mandamus against the judicial officer is authorized and frequent, just as a mistaken assumption of judicial authority may be prohibited by writ directed to the judicial officer. These are familiar principles.

The special question here is rather the plainer one of whether a prospective litigant may resort to the Federal Courts for an advance determination of a jurisdictional issue, where the claim involved is one of constitutional dimension, by initiating an action against a state judicial officer to whom that issue would in a normal action be submitted for determination. Here it would fall to Mr. Justice Heller to decide the question tendered in this Court were plaintiff immediately to proceed to the filing of an action for divorce without alleging two years residency on her own part or that of her husband.

■ Normally issues, and particularly issues of constitutional dimensions, are not determined except where they are necessarily drawn in question by litigation over real and present disputes in which the interest of each party requires that it seek a determination of the issue in an opposite sense of that sought by the other party. Hence, entertainment of plaintiff's suit here requires the conclusion that there is a genuine controversy between the plaintiff and one or more of the defendants in which they have an interest adverse to hers in the determination of the question. But Mr. Justice Heller has no such interest: if, as plaintiff contends, the statute is unconstitutional, then Mr. Justice Heller's sole interest is in so determining, and in denying effect of the statute. He is not an adversary of the plaintiff, but a judicial officer bound to decide the issue according to the law as he finds it. His decision cannot be foretold, but the assumptions of plaintiff's case would require the prediction that he would invalidate the statute just as the assumptions of the Attorney General's argument in this Court requires the prediction that he would hold the statute valid. In any case, his posture would be that of an entirely disinterested judicial officer and not in any sense the posture of an adversary to the contentions made on either side of the case. He would start by presuming that the statute is valid, as must this Court, but his unconditional responsibility would be to determine the issue in the light of constitutional considerations no less than considerations of interpretation. Similarly, the Clerk of the Marital Part has no adversary interest; if the complaint is one that the Court, State or Federal, advises him is properly to be entertained and filed, it is his duty to file it, and there is, in addition, a duty on his part to file any complaint which tenders a non-frivolous question of jurisdiction requiring judicial resolution.

The question, then, is whether the Attorney General may not have a very different responsibility and, of course, he has. His private judgment is quite beside the point; he must defend the statute whether he thinks it valid or invalid, for that is his official responsibility owed to the People of the State and the legislature through which they enacted the law. The responsibility of the Attorney General indeed assures that, if the case can genuinely be maintained, there will be adequate adversary representation of the position that one can suppose the absent husband might wish to take. But it would seem that the Attorney General would insist that he not be called on to put the statute at risk except where its validity was necessarily drawn in question in a litigation between adverse parties the disposition of whose rights inescapably required passing on the validity of the statute.

■■ Golden v. Zwickler, 1969, 394 U.S. 103, 110, 89 S.Ct. 956, 22 L.Ed.2d 113, is a recent reiteration of the general principle that no Federal Court has jurisdiction to pronounce any statute void because irreconcilable with the Constitution except as it is called upon to adjudge the legal rights of litigants in actual controversies. As the Court put it in North Carolina v. Rice, 1971, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413

"Early in its history, this Court held that it had no power to issue advisory opinions . . . and it has frequently repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."

The Court in Liverpool, etc., S.S. Co. v. Commissioners, 1885, 113 U.S. 33, 38–39, 5 S.Ct. 352, 355, 28 L.Ed. 899 after saying that it had no jurisdiction to pronounce a statute void because irreconcilable with the Constitution except as called upon to adjudge the legal rights of litigants in actual controversy continued by saying:

"In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law

in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."

Muskrat v. United States, 1911, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 is illustrative. There, the Congress had passed a law professing to confer on the United States Court of Claims and on the Supreme Court of the United States power to determine the constitutional validity of laws passed in 1904 and 1906 empowering the Secretary of the Interior to grant rights of way for pipe lines over Indian lands and extending for 25 years the time in which certain Indians of specified tribes were forbidden to alienate tribal lands. Plaintiffs in the action were Indians whose interests in their Indian land allotments might conceivably be affected by the restriction of rights or by grants of interests under the challenged statutes. The Supreme Court held that the statute could not confer jurisdiction of litigation to determine the validity of the statutes except in an actual case or controversy. Referring to the constitutional creation of the federal judicial power, the Court said (219 U.S. at 361, 31 S.Ct. at 255)

"That judicial power . . . is the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction. The right to declare a law unconstitutional arises because an act of Congress relied upon by one or the other of such parties in determining their rights is in conflict with the fundamental law. The exercise of this, the most important and delicate duty of this court, is not given to it as a body with revisory power over the action of Congress, but because the rights of the litigants in justiciable controversies require the court to choose between the fundamental law and the law purporting to be enacted within constitutional authority, but in fact beyond the power delegated to the legislative branch of the government. This attempt to obtain a judicial declaration of the validity of the act of Congress is not presented in a 'case' or 'controversy,' to which, under the Constitution of the United States, the judicial power alone extends. It is true the United States is made a defendant to this action, but it has no interest adverse to the claimants. The object is not to assert a property right as against the government, or to demand compensation for alleged wrongs because of action upon its part. The whole purpose of the law is to determine the constitutional validity of this class of legislation, in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the government in its sovereign capacity, and concerning which the only judgment required is to settle the doubtful character of the legislation in question. Such judgment will not conclude private parties, when actual litigation brings to the court the question of the constitutionality of such legislation. In a legal sense the judgment could not be executed, and amounts in fact to no more than an expression of opinion upon the validity of the acts in question."

While a case or controversy to be justiciable need not be one in which immediate specific relief is demanded and appropriate, Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617, makes clear that a justiciable controversy must be one that is not hypothetical or abstract, or academic or moot:

"The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests . . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts . . . . Where there is such a concrete case admitting of an immediate and definitive determina-

tion of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages."

Cases arise in which public officers, who would normally not be adversary parties to private litigants, do become adverse because their official acts damagingly transgress the rights of a litigant. *Boddie* is typical: the Clerk's refusal to file the plaintiffs' papers solely because they had not paid the filing fee, and the action of the judges charged with the administration of the Court in similarly declining to grant the applications to file the papers, were completed ministerial acts that as such and of themselves denied the very right which the Federal case properly vindicated in the action under 42 U.S.C. § 1983. The contest was between the litigants and the Clerk *qua* Clerk (and the administrative judges) seeking to exact a fee and barring access to the Court until it was paid. He (representing the State) was the adversary in the fee controversy that was barring the litigants. The action of the state officers was a completed denial by state action (*i. e.,* the refusal to file because the fee "due" the Clerk had not been paid) of a constitutional right, a denial of the Ex parte Young, 1907, 209 U.S. 123, 156, 161, 28 S.Ct. 441, 52 L.Ed. 714, type, and not a simply erroneous judicial decision on a constitutional point, reviewable only by appeal. Judge Smith in *Boddie* in the District Court, 286 F.Supp. 968, 971, pointed this out—that the defendants were there sued for their obstructive action, taken in their administrative capacities, action quite different from the judicial function exercised in an unreported state case decided by another judge who had, after full consideration on the merits, denied an application to proceed *in forma pauperis* in a divorce action. Similarly, where the extraordinary relief of mandamus or prohibition is granted as against a judicial officer who has either refused to exercise a jurisdiction or a discretion which it is his duty to exercise or who has insisted upon exercising a jurisdiction that is not his: the judicial officer has made himself an adversary by the course that he has pursued in denying a clear-cut right. Almost universally in such cases the extraordinary writ supplements the procedural law and but furnishes a mode of intermediate appeal from a damagingly mistaken determination that cannot be adequately remedied by appeal at the end of the whole case. Similar is such a case as Law Students, etc., Council v. Wadmond, 1971, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749, in which the adversary of the law-student applicants for admission to practice was, inevitably, a committee of the Appellate Division in any dispute over the right to be admitted to the Bar. Only the Court through its committee and by its confirmatory actions could grant or withhold the right to practice, subject to judicial review. The immediate act of granting or denying the right to practice law, as deliberative action taken on the application, was a completed act of government which, if it deprived a student applicant of a constitutional right, was vindicable by federal action under 42 U.S.C. § 1983 or by appeal through the New York Courts and, ultimately, to the United States Supreme Court. This is sharply brought out in Tang v. Appellate Division, 2d Cir. 1973, 487 F.2d 138. There *Tang* was denied admission by the Committee on the ground that he was a temporary and not permanent resident of the State. He petitioned the Appellate Division for an order admitting him and the Court denied his application. Then Tang sued in the federal court, which dismissed his complaint. The Court of Appeals held that Tang had voluntarily chosen to initiate judicial review of the denial of his application in the State Court and had obtained a determination, although it was adverse. The Court pointed out that Tang could choose between suit under 42 U.S.C. § 1983 to redress the allegedly wrongful denial or procedure through the state courts, and, having chosen state judicial procedure,

could not review the first adverse judicial determination, that of the Appellate Division, by an appeal to the federal district court. Again the case brings out the distinction between the public body as an adversary committing the act of right-denial and the tribunal that errs in performing a judicial function.

■ The critical difficulty in the present case is that it is neither denied or deniable that any action that Mr. Justice Heller or any of his colleagues could take on plaintiff's complaint for divorce if presented to him would necessarily be a judicial determination of the issue presented here and it could not under New York procedures be a merely ministerial or administrative act. Hence the essential quality of adverseness is intrinsically absent.

Finally, plaintiff suggests that to reject jurisdiction here, particularly on the ground on which the denial is placed, altogether denies her the right to vindicate her federal constitutional right in the first instance in a federal court and remits her to the state court. That, she points out, is necessarily the effect of the powerful probability that a federal district court would feel compelled to follow Phillips, Nizer et al., v. Rosenstiel, 2d Cir. 1973, 490 F.2d 509, 512–514, if she sought to sue for divorce in this court. Plaintiff suggests that the result is the same as indulging that general deference to the alternative of state court proceedings condemned in Zwickler v. Koota, 1967, 389 U.S. 241, 248, 88 S. Ct. 391, 19 L.Ed.2d 444, in Steffel v. Thompson, 1974, 415 U.S. 452, 461, 465–468, 94 S.Ct. 1209, 1217, 1219–1220, 39 L.Ed.2d 505, and in Salem Inn, Inc. v. Frank, 2d Cir. June 25, 1974, 501 F.2d 18, 22. The consequence is as plaintiff asserts, but it arises from the adventitious circumstance that the cause of action which she wishes to sue on is one that cannot be entertained in this Court. Want of federal jurisdiction of the class of actions involved prevents this Court at this time and in this form of action from dealing with the jurisdictional issue that the divorce case will present to the court in which it is properly filed if that court is required to apply the law of New York.

But for the circumstance that so many other federal district courts, including three-judge federal district courts, have entertained actions of precisely the shape of the present action, it would be proper and sufficient to stop here. The *sub silentio* holdings of the other federal cases make it more appropriate that the present ground of denying relief be considered a coordinate and not the sole ground of decision here.

### II

Plaintiff's good faith residence in New York is not challenged. She is employed here, means to reside here indefinitely, and has already resided in the State for over one year. Her argument for the unconstitutionality of the statutory requirement that one party to the marriage be shown at the time the action is commenced to have resided in New York for the two years preceding suit starts with the obvious fact that the statute classifies persons by the length of their residence here, and, in consequence, may be thought "suspect" under the equal protection clause absent showing that the abridgement of right worked by the classification serves a legitimate legislative objective which outweighs the loss of right flowing from the classification. She argues that the requirement deters migration into the State without reference to the purpose of migration by penalizing the migrant after her settlement here without serving any significant interest of the state. Denial of due process by the statute, it is argued, is evident in denial to her for two years of a right to an adjudication of her marital status at her own domicile despite the existence of a constitutionally exercisable jurisdiction.

That the right of access to the Courts is one that is constitutionally protected, she argues, Boddie v. Connecticut, *supra*, makes very clear. *Cf.* United States v. Kras, 409 U.S. 434, 444–445, 93 S.Ct·

631, 34 L.Ed.2d 626. She argues, and for present purposes the argument may be accepted as valid, that to deny her access to the state court at this time is to deny her an opportunity at a meaningful time and in a meaningful manner to seek the justice that she needs in view of her poverty and the necessity of resorting to a distant court to obtain relief it it is not available to her in New York. Turning to asserted legislative interests in imposing a residential requirement, plaintiff argues that the obvious need to establish a valid jurisdictional basis for marital actions is amply satisfied by a requirement of domicile without reference to duration of domicile, and that to require domicile of a specific duration, especially one so long as two years, is to reject reasonable alternative means of protecting the courts against imposition in favor of adopting an arbitrary and, in effect, conclusive presumption against domicile until two years have passed. Vlandis v. Kline, 1973, 412 U.S. 441, 446, 93 S.Ct. 2230, 37 L.Ed.2d 63, is only the most recent case rejecting conclusive presumptions that residence has not been acquired because duration of residence has not exceeded a statutory term. See Carrington v. Rash, 1965, 380 U.S. 89, 96, 85 S. Ct. 775, 13 L.Ed.2d 675. Plaintiff argues that neither the promotion of marital reconciliation nor economy in the administration of the Courts of this State presents a significant reason for the legislation since no parallel restrictions are imposed on residents having the same interest in reconciliation and in unburdening the courts of their causes. And plaintiff relies heavily on the number of cases that have—in the wake of the Supreme Court's durational residence adjudications in other fields of the law—invalidated durational residential requirements in marital cases. The cases are, concededly, divided, however.

The Attorney General presents the matter in a very different light which emphasizes the special nature of the marriage relationship, the special nature of judicial divorce, and the role that residence and length of residence plays in the complex jurisdictional problems created by marital actions in cases in which only one of the parties to the action resides in New York and the marriage itself has had no New York contact. It is pointed out that if the "cause" of the divorce action occurred in the state and both parties resided in the state when the divorce action was commenced the Court would have jurisdiction without reference to duration of residence. In view of the grounds or "causes" of divorce defined in Section 170 of the Domestic Relations Law, Section 230, subd. 4 has a significant sphere of operation, and it emphasizes that the New York statute is not essentially oriented to length of residence for its own sake but because of its relation to "causes" of divorce and problems of jurisdiction. Other subdivisions of Section 230 do indeed require that one party to the proceeding have resided within the state for a year preceding action, but in each instance the concern with jurisdictional considerations is manifested in the requirement that there be present a second jurisdictional factor, that is, that the parties had been married in the state, or had once resided together in the state as husband and wife, or that the "cause" occurred in the state. It is only where no second factor is present that, in subdivision 5 of Section 230, the longer residence period is introduced into the statute.

The Attorney General points out further that the establishment of grounds for divorce and the provision of judicial actions for divorce are both wholly creatures of statute. See Wait v. Wait, 1850, 4 N.Y. 95, 100. Thus, before the drastic changes in New York divorce law the sole ground for dissolving an otherwise valid marriage was the defendant's adultery. In order to maintain an action for divorce on the ground of one party's adultery it had to be shown either that both parties resided in the state when the offense was commit-

ted (without reference to where they resided when the action was commenced), or that the parties had been married in the state, or that the plaintiff resided in New York when the offense was committed and still resided in New York when the action was commenced, or that the offense was committed in the state and the injured party resided in the state when the action was commenced. Hence, it is argued, until the change in the divorce law the plaintiff would have had no opportunity to sue in New York at all. And, as under the present statute, three factors, that is, a marital residence in the state, solemnization of the marriage in the state, and occurrence of the offense in the state, were all given jurisdictional significance; no duration of residence, however, was required. In a word, New York has not historically based its exercises of jurisdiction on duration of residence but on the fact of residence among other jurisdictional facts. Duration of residence under the present statute is, similarly, not calculated to screen out non-residents or discourage access. It establishes, rather, the substantiality of the state's interest in the party whose residence (or domicile) in the state under Section 230 authorizes it to exercise jurisdiction over the marital status or contributes to that authorization.

 The Attorney General agrees, of course, that Williams v. North Carolina, 1942, 317 U.S. 287, 297–299, 63 S.Ct. 207, 87 L.Ed. 279, makes it clear that each state has such a concern in the marital status of persons domiciled in the state that it can alter the marital status of the spouse domiciled within it even though the other spouse is absent. That, however, does not signify that the state must exert every jurisdictional authority that it might exercise if it went to the limit of its powers. It is not unreasonable, where the sole basis for its jurisdiction is a recently acquired domicile, to show a measure of deference to the interest of the absent spouse, and to the interest of the state from which its

new domiciliary has so recently removed, and to make provision for the integrity of its decrees when called into question in other courts. Cf. Shiffman v. Askew, supra, 359 F.Supp. at 1231–1232. The New York statute must function in a system in which comparable statutes of other states, including the state from which its new domiciliary has removed, may authorize adjudication of the same marital status. It is not unreasonable for New York to take into account, particularly since so many marital actions against non-resident defendants are undefended actions which must essentially be decided ex parte, that the risk of fraudulent imposition on the courts and on absent defendants is substantial and can be very materially diminished by imposing a requirement that plaintiff show that one of the parties has resided in New York for two years preceding suit.

 To put it another way, New York has granted the right to divorce and afforded a forum on a perfectly reasonable pattern. It cannot fairly be argued that such a statute inhibits migration into the state or imposes an irrational constraint upon the new domiciliary's appeal to the court for relief in respect to his or her marital condition. That the state might have gone further and provided other bases of jurisdiction does not mean that it has violated the constitutional rights of potential suitors in not doing so. The jurisdictional requirements form part of a coherent whole, particularly when read with Domestic Relations Law, § 170 and the nature of the grounds of divorce there created. The statutory scheme neither implicates any invidious discrimination against recent domiciliaries nor manifests a will to inhibit migration into this state, but only a concern with establishing adequate jurisdictional bases for adjusting marital relations in the light of the coexisting powers of other states to affect the same relationships in the interest of the spouse domiciled in such other states. It is to be borne in mind

that legislative enactments do not have to justify themselves, they do not have to be supported by proofs. They are self-justifying because legitimately enacted until it is demonstrated that they work some unconstitutional deprivation of right. There is no such showing here.

### III

The case has been pleaded as a class action, but the obstacles to treating it as such are insuperable. In a sense the "class" or "classes" are illimitable, and the class members have not that concurrence in time and nature of interest which could bring them into the focus of this case, or of any other individual case. Rather, this is, if properly a case, a classic test case dealing with a matter certain of recurrence and with a statute uninterrupted in its operation. The important issue involved is one that threatens indefinitely to evade review since time dissolves particular applications of the statute inevitably, and it is the very statutory insistence on the onerous and right-defeating lapse of time that is challenged. It can safely be said that the case will not be mooted by the lapse *pendente lite* of the two years of residence required by Domestic Relations Law § 230, subd. 5. See Super Tire Engineering Co. v. McCorkle, 1974, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1, and cases cited.

It is

Ordered that plaintiff's motion for summary judgment is denied and that defendants are entitled to summary judgment and that the Clerk enter judgment that plaintiff take nothing and that the action is dismissed.

DOOLING, District Judge (dissenting in part).

The state has by statute created grounds of divorce and established judicial jurisdiction over divorce actions. Having done so, it may not establish an arbitrary pattern for the exercise of divorce jurisdiction. The variations in the jurisdictional pattern must be reasonably related to attaining the legislative objectives, that is establishing substantive grounds for divorce, and regulating the assumptions of judicial jurisdiction so as to assure the validity, efficacy and convenience of the exercises of jurisdiction. Under New York law as it existed before the major revision of the divorce law in 1966 residence was a jurisdictional factor but duration of residence was not a jurisdictional factor in divorce actions although it was (under former Domestic Relations Law § 230, subd. 3) in annulment and separation actions. See, e. g., Law of 1962, Chapter 313, §§ 7, 10. If residence is, indeed, jurisdictionally relevant in marital actions, as, historically, it has been considered, it has been the fact of residence and not its duration that has been considered relevant. The present statute establishes as jurisdictionally relevant factors in all marital cases (i) marriage in the state, (ii) the occurrence of the cause of the action in the state, (iii) marital residence (however brief) at any time in the state, and (iv) residence in the state (however brief) by both parties at the time of suit; in addition, one year of residence in the state before suit by one of the parties was made a jurisdictional factor in 1966. Two jurisdictional factors are required to concur to establish jurisdiction, except by subdivision 5 where the two year residence requirement seems to take the place of the absence of a second jurisdictional factor. The tabular symmetry that emerges does not justify or rationalize the jurisdictional pattern or the place in it of duration (as distinguished from the fact) of residence. Rather, the prominence of the one year duration of residence factor in the statute appears logically to demonstrate that such a provision was adequate to accomplish every legislative objective that *duration* of residence (as distinguished from the fact of residence) might be supposed to seek

to assure. Substantially for the reasons set forth by Judge Pettine in Larsen v. Gallogly, D.R.I.1973, 361 F.Supp. 305, the statute should be found unconstitutional.