**Robert C. RHODES, Plaintiff,**

v.

**Louis D. LAURINO, Queens County Surrogate, and Dorothy M. Dooley, Director, Adoption Department, New York Foundling Hospital, Defendants.**

No. 77–C–437.

United States District Court, E. D. New York.

Feb. 2, 1978.

Robert C. Rhodes, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York by Marian B. Scheuer, Asst. Atty. Gen., New York City, for defendant Laurino.

Bodell & Magovern, P.C., New York City, for defendant Dooley.

MEMORANDUM and ORDER

COSTANTINO, District Judge.

This is an action, brought pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, seeking (1) a declaration that Section 114 of the New York Domestic Relations Law is unconstitutional on its face and as applied, and (2) an injunction prohibiting the enforcement of that statute. Plaintiff claims that the statute violates his First, Fifth, Ninth, Thirteenth, and Fourteenth Amendment rights, and seeks the convening of a three-judge court to hear his claim. Since 28 U.S.C. § 2281 has been repealed, and since this is not an appropriate case for a three-judge court under 28 U.S.C. § 2284, as amended August 12, 1976, the request for the convening of a three-judge court is denied.

The plaintiff in this case is a fifty year old adoptee who wishes to obtain the medical histories of his natural parents and their forebears "to assist his physician with the diagnosis and possible prevention of degen-

erative deseases. [sic]." (Complaint, Preliminary Statement). Defendant Laurino is the Surrogate of Queens County, and defendant Dooley is the Director of the Adoption Department of the New York Founding Hospital. To date, plaintiff has been unsuccessful in his attempts to obtain the records since they are sealed pursuant to N.Y. Dom.Rel. Law § 114, which provides in pertinent part:

> No person shall be allowed access to such sealed records and order [of adoption] and any index thereof except on order of a judge or surrogate of the court in which the order was made or of a justice of the supreme court. No order for disclosure or access and inspection shall be granted except on good cause shown and on due notice to the adoptive parents [both of whom are deceased in this case] and to such additional persons as the court may direct. N.Y. Dom.Rel. Law § 114 (McKinney Supp. 1976–77).[1]

Plaintiff first attempted to obtain the records he seeks in March of 1976, when he wrote to Patricia F. Gilmartin, the Deputy Chief Clerk of the Queens County Surrogate's Court, requesting that he be apprised of the procedure for obtaining information about his natural parents. He was informed that medical information could be disclosed upon evidence from competent medical authority that such information was urgently needed. Accordingly, he submitted a letter from a doctor to the effect that "the urgency of some ailments (e. g. cardiac) do [sic] not permit for court petitions upon an attack's unexpected occurrence, and any time delay might well prove fatal or seriously disabling to the patient." (Complaint, ¶ 13). Plaintiff received a response from someone in the Surrogate's Court dated April 19, 1976, that the doctor's letter did not show the type of pressing need for the information that would cause the Surrogate's Court to grant the petition to open the sealed records. On April 21, 1977 plaintiff requested advice from the Surrogate's Court as to how he "might seek review of the Surrogate's administrative decision" (Complaint, ¶ 13), and it was suggested that he consult with an attorney.

In June of 1976, plaintiff sought to obtain the desired information from the records of the New York Foundling Hospital, his place of birth. Defendant Dooley, the director of the Adoption Department at the hospital, refused to release the records to plaintiff.

On December 20, 1976, plaintiff submitted a petition to the Queens County Surrogate's Court for the release of his adoption records. Without a hearing, the petition was returned with a cover letter from a law assistant stating that it did not meet the "good cause" requirement of Dom. Rel. Law § 114.[2] The plaintiff never resubmitted either the original or an amended petition for the Surrogate's determination.

Defendants have moved to dismiss the complaint on numerous grounds, among them that (1) the plaintiff lacks standing; (2) there is no justiciable controversy; and (3) this court should abstain from interfering with state regulation of domestic relations law.

Factually, this case is similar in certain significant respects to *Berrigan v. Norton*, 451 F.2d 790 (2d Cir. 1971). There, the plaintiffs were seeking to have declared unconstitutional a prison regulation which restricted prisoners in preparing and disseminating writings intended for publication outside the prison. Plaintiffs, who were inmates at the prison, had prepared a sermon for delivery outside the facility. One plaintiff had not even submitted the

---

1. Notwithstanding the fact that the records of his adoption are sealed, plaintiff states that he was born Phillip Kearney on January 28, 1927 at the New York Foundling Hospital, and that his natural mother was a fifteen year old girl who gave her name as Agnes and her home as Madison, New Jersey. (Complaint, ¶ 7). Nothing appears in the complaint to indicate how plaintiff became aware of these facts.

2. The preceding facts are taken from plaintiff's complaint, and for purposes of the motion to dismiss, must be taken as true. *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

sermon to his caseworker, because he "had it in mind that the request would be turned down." 451 F.2d at 792. The other plaintiff did submit the sermon to his caseworker, who returned it with a notation that if he cared to discuss it, plaintiff should see him. Plaintiff did not pursue the matter further, and neither plaintiff submitted the sermon to the warden, who was charged with the authority to approve or reject it. The Court of Appeals for the Second Circuit affirmed the denial of preliminary injunctive relief, stating that the plaintiffs had "never taken the necessary step of submitting the sermon to the warden," 451 F.2d at 793, and therefore the sermon had never been disapproved *officially*. The court concluded that "at least from the present state of the record, the appellants do not appear to present a justiciable case or controversy." *Id.*

In this case, the plaintiff has failed to take the "necessary step" of submitting his petition to the Surrogate for his determination. Thus, the statute has never been applied to this plaintiff so as to create a justiciable case or controversy. *See United Public Workers v. Mitchell*, 330 U.S. 75, 86–91, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Obviously, if the Surrogate were to rule favorably on the petition, there would be no case or controversy for this court to decide. If the Surrogate were to reject the petition, then the challenged statute would have been applied to the plaintiff, and he might then be in a position to bring his action in this court.[3]

The court is well aware that plaintiff has made numerous inquiries as to how to go about obtaining the medical records of his natural parents, and that he did submit a petition to the Surrogate to obtain those records. As stated above, the petition was returned with a cover letter from a law assistant that it should be amended to spell out specifically the claimed good cause for the release of the records. Plaintiff never resubmitted the petition.

There is no question here that Surrogate Laurino has never *officially* rejected plaintiff's petition. The return of the petition with the cover letter from the law assistant here is analogous to the return of the sermon by plaintiff's caseworker in *Berrigan v. Norton, supra*. As the plaintiff in *Berrigan* did not pursue the matter further by submitting the sermon to the warden, and thus failed to take a "necessary step", so here plaintiff did not pursue the matter further by resubmitting his petition to the Surrogate, and thus also failed to take a "necessary step" in attempting to obtain the records he sought.

The fact that plaintiff's petition was returned by a law assistant was not the equivalent of a formal rejection of the petition by the Surrogate. Notwithstanding that the petition may not have stated "good cause" with sufficient particularity, if plaintiff had some particular point—such as the present constitutional point—which he believed obviated the necessity for the allegedly indispensible good cause allegation, he could have insisted that the petition be submitted to the Surrogate for a determination. *Cf. Mendez v. Heller, supra*, 530 F.2d at 460, quoting from 380 F.Supp. at 989. The failure to take that final step is, at this point, fatal to the maintenance of this action, since the challenged statute has never been adversely applied to the plaintiff, and there is therefore no "exigent adversity," *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), which is "an essential condition precedent to federal court adjudication." *Mendez v. Heller, supra*, 530 F.2d at 461. Accordingly, the court is constrained to dismiss the complaint against defendant Laurino.

---

**3.** Even if the Surrogate does reject the petition, there may still be other obstacles to the maintenance of the action. *See, e. g., Mendez v. Heller*, 380 F.Supp. 985, 992–93 (E.D.N.Y.1974) (three-judge court), vacated and remanded for the entry of a fresh decree to permit an appeal to the Court of Appeals on the issue of justicia-

bility, 420 U.S. 916, 95 S.Ct. 1107, 43 L.Ed.2d 386, *aff'd sub nom. Roman v. Heller*, 530 F.2d 457 (2d Cir. 1976). *See also Gras v. Stevens*, 415 F.Supp. 1148 (S.D.N.Y.1976) (three judge court). However, in light of the court's decision, it is not necessary to decide those issues at the present time.

■ The complaint must also be dismissed against defendant Dooley since it fails to state a cause of action against her under 42 U.S.C. § 1983. That section provides a remedy for persons whose rights have been violated by persons acting under the color of state law. Where the alleged violator of plaintiff's constitutional rights is not a state official, the individual will rarely be found to have acted under color of state law. *Jobson v. Henne*, 355 F.2d 129, 133 (2d Cir. 1966). *See also Padover v. Gimbel*, 412 F.Supp. 920 (D.Pa.1976); *Oller v. Bank of America*, 342 F.Supp. 21, 23 (N.D.Cal.1972); *Warren v. Cummings*, 303 F.Supp. 803, 805 (D.Colo.1969). While there are instances where a private person has been found to have acted under color of state law, *Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969) (private individual acting in concert with state official), *Williams v. United States*, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951) and *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974) (private citizen participating in police action or sanctioned by state to exercise police authority), *Magro v. Lentini Bros. Moving and Storage*, 338 F.Supp. 464, 466, n. 7, *aff'd*, 460 F.2d 1064, *cert. denied*, 406 U.S. 961, 92 S.Ct. 2074, 32 L.Ed.2d 349, *reh. denied*, 408 U.S. 932, 92 S.Ct. 2505, 33 L.Ed.2d 345 (1972) (private person performing traditionally public function), *Harrison v. Murphy*, 205 F.Supp. 449 (D.Del.1962) (state law compelled challenged action), *Holmes v. Silver Cross Hospital*, 340 F.Supp. 125 (D.Ill.1972) (state regulations "pervaded" otherwise private institution), the case at bar does not fall within an exception to the general rule that private persons do not act under color of state law.

Here, there is a bare allegation that defendant Dooley acted at the direction of, and therefore in concert with, defendant Laurino, who is admittedly a state official. However, since the complaint has been dismissed against Laurino, it cannot be maintained against Dooley on that basis. *Cf. Hansen v. Ahlgrimm*, 520 F.2d 768 (7th Cir. 1975); *Guedry v. Ford*, 431 F.2d 660 (5th Cir. 1970). It has not been alleged that defendant Dooley was performing a traditionally public function. Nor is there any allegation that the hospital is a public hospital, or that it received public funds.[4]

Moreover, it cannot be said that the state statute involved here—Dom. Rel. Law § 114—compelled the challenged action. That statute is directed to the courts—it requires court records to be sealed, and it charges the courts with the enforcement of its provisions. It does not require a hospital to seal its records relating to the medical histories of persons who give their children up for adoption. It may be that the hospital has regulations of its own with respect to the confidentiality of medical records, but the enforcement of such regulations, absent some state action, would not give rise to a claim under 42 U.S.C. § 1983. *Cf. Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968).

Even assuming that defendant Dooley believed she was acting in compliance with a state statute, this court cannot hold that she is a proper defendant in this action; to do so would be to subject every private citizen who acts in conformity with a state law to potential liability as a civil rights violator, "a result which Congress surely did not intend." *Warren v. Cummings, supra*, at 806.

In light of the foregoing, the complaint is dismissed.

So ordered.

---

4. Even if an allegation had been made that the hospital received public funds, that fact alone would not give rise to state action, *Ward v. St. Anthony Hospital*, 476 F.2d 671 (10th Cir. 1973); *Chrisman v. Sisters of St. Joseph of Peace*, 506 F.2d 308 (9th Cir. 1974), since a private hospital will be subject to suit under the civil rights laws "only if its activities are significantly affected with state involvement." *Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873, 877 (5th Cir.), *reh.* and *reh. en banc denied*, 515 F.2d 1183 (1975). No allegation of such state involvement is made here.