Robert C. RHODES, Appellant,

v.

Louis D. LAURINO, Queens County Surrogate, and Dorothy M. Dooley, Director, Adoption Department, New York Foundling Hospital, Appellees.

No. 199, Docket 78–7243.

United States Court of Appeals, Second Circuit.

Argued March 19, 1979.

Decided June 22, 1979.

Robert C. Rhodes, appellant pro se.

Ellen Marks, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirschowitz, First Asst. Atty. Gen., Marian B. Scheuer, Asst. Atty. Gen., New York City, of counsel), for appellee Laurino.

Gerald E. Bodell, Bodell & Magovern, New York City (Frederick J. Magovern, New York City, of counsel), for appellee Dooley.

Cyril C. Means, Jr., Professor of Law, New York City, and Bertram A. Hirsch, New York City, filed a brief as amicus curiae on behalf of The Alma Society, Inc.

Before LUMBARD and OAKES, Circuit Judges, and BRIEANT, District Judge.[*]

PER CURIAM:

This appeal, pro se, is from a judgment denying a declaration of unconstitutionality of Section 114 of the New York Domestic Relations Law [1] on its face and as applied. Appellant is an adult adoptee seeking to obtain the medical history of his natural parents and their forebears. Judgment dismissing his complaint was granted by the United States District Court for the Eastern District of New York, Mark A. Costantino, Judge. *Rhodes v. Laurino,* 444 F.Supp. 170 (E.D.N.Y.1978). We have upheld the statute against a broadbased attack on its facial validity in *Alma Society v. Mellon,* 601 F.2d 1225, handed down herewith. We affirm Judge Costantino's opinion dismissing the complaint insofar as it seeks to obtain a ruling as to unconstitutionality as applied.

The statute in question permits an adoptee to obtain access to his sealed adoption records "for good cause shown." Appellant wrote to the Deputy Chief Clerk of the Queens County Surrogate's Court requesting to be apprised of the proper procedure to obtain information about his natural parents; the clerk advised that medical information *could* be disclosed upon evidence from competent medical authority that it was *urgently* needed. Appellant submitted a letter from a doctor to the effect that "some ailments (e.g. cardiac) do not permit for court petitions upon an attack's unexpected occurrence, and any time delay might well prove fatal or seriously disabling to the patient." Someone in the Surrogate's Court told appellant that the doctor's letter was insufficient. He then requested advice as to how he "might seek review of the Surrogate's administrative decision," and someone suggested that he obtain counsel. Finally, after unsuccessfully seeking to obtain the desired information from the records of the hospital where he was born,[2]

---

[*] Of the Southern District of New York, sitting by designation.

1. N.Y.Dom.Rel.Law § 114 provides in pertinent part:

If satisfied that the best interests of the adoptive child will be promoted thereby the judge or surrogate shall make an order approving the adoption and directing that the adoptive child shall thenceforth be regarded and treated in all respects as the child of the adoptive parents or parent. . . . Such order shall contain the full name, date and place of birth and reference to the schedule annexed to the petition containing the medical history of the child in the body thereof and may direct that the child's medical history be furnished to the adoptive parent. . . Such order and all the papers in the proceeding shall be filed in the office of the court granting the adoption and the order shall be entered in books which shall be kept under seal and which shall be indexed by the name of the adoptive parents and by the full original name of the child. Such order, including orders heretofore entered, shall be subject to inspection and examination only as hereinafter provided. . . . If the confidentiality is violated, the person or company violating it can be found guilty of contempt of court. . . .
No person, including the attorney for the adoptive parents shall disclose the surname of the child directly or indirectly to the adoptive parents except upon order of the court.

No person shall be allowed access to such sealed records and order and any index thereof except upon an order of a judge or surrogate of the court in which the order was made or of a justice of the supreme court. No order for disclosure or access and inspection shall be granted except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct.

2. The district court dismissed the complaint against Dorothy M. Dooley, the Director of the Adoption Department, New York Foundling Hospital. It found that the complaint failed to state a cause of action under 42 U.S.C. § 1983 because Dooley, as a private individual, was not acting in concern with state officials and was not performing a public function; nor was the challenged action compelled by "the state statute involved here—Dom.Rel.Law § 114 . . . ." *Rhodes v. Laurino,* 444 F.Supp. 170, 173 (E.D.N.Y.1978). Dooley's action was compelled, however, by N.Y.Soc.Serv.Law § 372 (McKinney) which reads in pertinent part:

§ 372. Records and reports.

. . . . .

4. All such records relating to such children shall be open to the inspection of the board and the department at any reasonable time, and the information called for under this section and such other data as may be required by the department shall be reported to the department, in accordance with the

appellant filed a petition with the Surrogate's Court on December 20, 1976. The petition, however, was returned to him without a hearing and with a cover letter from a law assistant stating that it did not meet the "good cause" requirement of the statute. Appellant then brought suit in federal court.

We recognize appellant's impatience with a system that seemingly permits law assistants to the Surrogate to decide what does or does not constitute "good cause," but we must find that the case is not ripe because the Surrogate's Court itself has not determined the issue adversely to him.[3] Appellant should file his petition again and seek a hearing thereon. If the court itself refuses to hear him, *Mendez v. Heller,* 530 F.2d 457, 461 (2d Cir. 1976) (Oakes, J., concurring opinion), or its clerical or legal personnel continue to refuse to accept his petition for filing, *Boddie v. Connecticut,* 401 U.S. 371,

91 S.Ct. 780, 28 L.Ed.2d 113 (1971), a complaint such as the one now filed may then state a federal claim that is ripe for relief.[4] *See also Berrigan v. Norton,* 451 F.2d 790 (2d Cir. 1971) (prisoner attempting to publish a sermon did not present a justiciable case or controversy absent a showing of rejection by the warden).

Accordingly, we affirm the judgment below.

regulations of the department. Such records kept by the department shall be deemed confidential and shall be safeguarded from coming to the knowledge of and from inspection or examination by any person other than one authorized, by the department, by a judge of the court of claims when such records are required for the trial of a claim or other proceeding in such court or by a justice of the supreme court after a notice to all interested persons and a hearing, to receive such knowledge or to make such inspection or examination. No person shall divulge the information thus obtained without authorization so to do by the department, or by such judge or justice.

Nevertheless we affirm the dismissal of the complaint against Dooley. Even assuming that Dooley was acting under color of state law by virtue of § 372, appellant has not made any showing that Dooley deprived him of his constitutional rights. He has not alleged that Dooley would have refused to supply the information had she been ordered to do so. Because it is not unconstitutional for the State to require a showing of "good cause" before authorizing the release of adoption information, *Alma Society v. Mellon,* 601 F.2d 1225, it is, a fortiori, not unconstitutional for Dooley to refuse to disclose the information unless the court has found "good cause" and ordered her to release the records. Accordingly, we affirm the lower court's opinion with respect to appellee Dooley.

3. According to N.Y.Surr.Ct.Proc.Act § 2609 (3)(a) (McKinney), the Surrogate may "[d]esignate the chief clerk, one of the other clerks, a law assistant or any assistant, to take

and report the testimony in any proceeding, but without authority to pass upon the issue therein." In explaining this section, the Practice Commentary states that:

Subdivision 3(a) extends to the surrogate of all counties discretionary power to designate law clerks and law assistants to take and report testimony. Previously this authority was limited to the surrogates in the metropolitan counties and Erie County. *Such designated clerks and law assistants have no power to determine any issues of fact or law.* That is the responsibility of the surrogate.

Practice Commentary accompanying N.Y.Surr. Ct.Proc.Act § 2609 (McKinney 1967) (emphasis added). Thus, although the law assistant to a Surrogate has a certain amount of authority, it does not include making a ruling on a petition such as Rhodes's petition.

4. In the event that the Surrogate Court rules unfavorably on Rhodes's petition, it is likely that this court would abstain from immediately hearing appellant's § 1983 action. The validity of the statute as applied might well be dependent upon the New York courts' interpretation of "good cause," warranting abstention under *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See McRedmond v. Wilson,* 533 F.2d 757, 760–64 (2d Cir. 1976). *But see Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 302, 38 L.Ed.2d 260 (1973); *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).